TOLLIVER v. STATE.

Opinion delivered May 18, 1914.

1. HOMICIDE—SUFFICIENCY OF EVIDENCE TO CONVICT.—Defendant was indicted for the crime of murder in the first degree, and the evidence held sufficient to warrant a verdict of guilty of murder in the second degree. (Page 145.)

2. CONTINUANCES—DISCRETION OF THE COURT.—Where defendant in a criminal trial asked a continuance for the term on account of the absence of certain witnesses, and no attempt was made to show where the witnesses were, or that they could not be found in a few days, it will be held that the court did not abuse its discretion in refusing a continuance for the term. (Page 146.)

3. EVIDENCE—DYING DECLARATIONS.—Evidence that deceased exclaimed, "I am all in," and called on God to forgive his sins, held sufficient to warrant the admission of statements of deceased, made at the time, as dying declarations, when deceased died a few days thereafter. (Page 146.)

4. HOMICIDE—INTENTION TO KILL—PRESUMPTION.—It can not be said as a matter of law that the act of defendant in striking deceased on the head with a bottle will raise a presumption that defendant intended to kill deceased, because a bottle is not an instrument calculated to inflict great bodily harm, and under the facts the method in which it was used was not so calculated. (Page 148.)

5. HOMICIDE—ERRONEOUS INSTRUCTION—INTENT—PREJUDICE. — Although an instruction on the issue of criminal intent is erroneous in a

trial for homicide, the same will be held not to be prejudicial when defendant was convicted of second degree murder, specific intent to take life not being an essential element of that degree of homicide.  (Page 149.)

Appeal from Garland Circuit Court; *Calvin T. Cotham,* Judge; affirmed.

*Wm. G. Bouic,* for appellant.

1.  Where a continuance is sought on account of the absence of witnesses whose testimony is material to the defense, and not merely cumulative, and due diligence has been used to procure their attendance, and shown in the motion, it is an abuse of discretion and reversible error to refuse such continuance.  60 Ark. 576; 100 Ark. 301, 310, 311; 99 Ark. 394; *Id.* 547.

2.  The alleged dying declarations of the deceased, as detailed by the witness Jackson, were improperly admitted.  The entire statement was incomplete as to manner, time, place, circumstances and parties, and its admission was highly prejudicial to the rights of the appellant.  4 Enc. of Ev. 985; *Id.* 1000; 32 Miss. 433; 118 Mo. 491; 24 Am. Dec. 695; 5 Rand. (Va.) 701; 68 Ark. 355; 2 Ark. 229; 104 Ark. 175, 176, 177.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1.  There is no abuse of discretion in overruling a motion for a continuance where the motion shows that two of the absent witnesses live in the town where the trial is being had, with no showing that they were not in the town when the trial was called, and there is no showing that further process was sought to enforce their attendance; and where it appears that the third witness is a nonresident of the State, and there is nothing to show that his testimony could, with any degree of certainty, be obtained.  110 Ark. 402; 92 Ark. 29, 30.  See, also, 94 Ark. 169.

2.  We think the dying declaration was properly admitted.  There is enough in the record to show that the deceased, at the time he made the statement, was speaking in the consciousness of impending death.  109 Ark. 510.

McCULLOCH, C. J. Appellant is accused of killing one Charles Bowen by striking him on the head with a bottle, and she was adjudged guilty of murder in the second degree under an indictment which charged murder in the first degree.

Appellant is a negress and was the keeper of a bawdy house in the city of Hot Springs at the time of the killing, which occurred at her resort on November 1, 1913, on the closing day of the Hot Springs Fair.

Deceased was a young white man, nineteen years of age, who resided in the adjoining county, and came to Hot Springs with some of his companions to attend the Fair, or, at least, to spend the closing night of the Fair in Hot Springs. The young men went to appellant's resort, and most of them, if not all, were intoxicated. Deceased was intoxicated to a noticeable extent. They were at the place about midnight, and after remaining there a short while, the party, led by deceased, started to leave, when deceased, standing at the front door, broke the glass out of the door. The testimony adduced by the State tends to show that when this occurred, appellant was somewhere in the rear of the house, but came forward, and when she saw what had been done, started back in the direction she had come from, making the remark, ''I will fix the son-of-a-bitch,'' and returned in a moment with a beer bottle in her hand, and walked out where deceased was on the porch and struck him on the side of the head with the bottle. Deceased was carried by his companions to a hillside not far away, where they left him lying down. They returned a short time afterward and carried him to a hotel in Hot Springs and put him to bed. The next day he was carried to his home in the country, and died within a few days, having been attended by a physician in the meantime.

The evidence tended to establish the fact that death resulted from the blow inflicted by appellant. Several of the young men were introduced by the State as witnesses, and their respective narratives of the circumstances varied to some extent, but the conflict was not

material. The testimony of each of them tends to establish a felonious homicide.

Appellant herself gave a somewhat different account of the affair. After telling about the visit of the young men to her resort, she stated that the young men were considerably intoxicated, especially the deceased, who was a stranger to her; that while she was in the back part of the house she heard the noise of the falling glass toward the front, and went forward and asked who broke the glass in the door, and one of the young men replied that "Some one threw a rock;" that she looked out through the door where the glass was broken and saw a man on the steps whom she supposed was the one who threw the rock, and she stepped back in another room and picked up a beer bottle and hurried out to the front door and "threw it out down the steps," and didn't know whether she hit him or not.

One of the State's witnesses testified that it looked like a quart beer bottle.

The evidence was, we think, sufficient to warrant the jury in finding the defendant guilty of murder in the second degree.

The case is brought here on numerous assignments of error.

The first is in the ruling of the court refusing to grant a continuance.

The killing occurred, as before stated, on November 1, 1913, and the indictment against appellant was returned into court on November 17, 1913, and the case went to trial on January 7, 1914. On that day appellant, through her counsel, presented a motion for postponement until the next term of the court in order to procure the attendance of three absent witnesses. Two of them, who are alleged to have resided in the city of Hot Springs, had been summoned as witnesses, but were not in attendance. It is stated in the motion that appellant had made diligent search for them, and had been unable to find them, but could procure their attendance at the next term of the court.

If the court had been asked to postpone the case for a few days to give time to make more diligent search for these two witnesses, it is presumed that the time would have been granted. But that was not done, and, on the contrary, postponement was sought until the next term of the court. No attempt was made to show where the witnesses were or to show that they could not be found within a few days.

No abuse of discretion is shown in refusing to postpone the case until the next term.

It is stated in the motion that the other absent witness had not been found by the sheriff; that he was connected with one of the "concessions" at the Fair, and his address could not be ascertained at that time because of the fact that "at this period of the year exhibitions which accompany Fairs are usually in their winter quarters, and that as soon as the itinerary of State Fairs is announced the whereabouts of said witness can easily be ascertained."

That is rather too remote to justify the court in postponing the case. At any rate, it can not be said that the court abused its discretion in refusing to grant a postponement under those circumstances.

The next assignment relates to the admission of a statement of deceased as a dying declaration, it being contended that the evidence is not sufficient to show that deceased was at that time *in extremis,* or that he made the statement in contemplation of immediate dissolution.

The witness testified that he visited deceased at his home a day or two before he died; that deceased seemed to be suffering very much, and said, in the presence of witness, "I am all in. My head is killing me," and turned over and commenced crying, choked up and couldn't talk, and in a little while exclaimed, "I have done so wrong so many times, my Lord, my God, I pray, forgive, forgive." He was permitted then to state, after relating those circumstances, that deceased made the statement to him that "She hit me with a bottle."

We have reached the conclusion that this testimony was sufficient to warrant the court in submitting it to the jury with an instruction permitting them to determine whether deceased made the statement with the knowledge of impending death and in contemplation of his immediate dissolution.

Moreover, we are of the opinion that the statement had no prejudicial effect, for the reason that the testimony is undisputed that appellant hit deceased with a bottle, the only conflict in the testimony being whether she struck the blow with the bottle in her hand or whether she threw it at deceased and struck him, a point to which the alleged declaration of deceased did not reach.

There are numerous assignments with respect to the giving and refusing of instructions. The record has not been abstracted either by appellant or the Attorney General, and we have been compelled to explore the record ourselves. The instructions are very numerous and covered all the different phases of the case. It would be an useless task to set out all the instructions and comment on them, and as we find no prejudicial error, we refrain from doing so.

There are two instructions, however, upon which we deem it proper to offer some comment. They are two given over appellant's objection by the court of its own motion, and read as follows:

"15. The court instructs the jury that every person is presumed, in law, to contemplate the ordinary and natural consequences of his act, so, in this case, if you find from the evidence beyond a reasonable doubt that defendant hit and struck Charlie Bowen on the head with a bottle as alleged in the indictment, and that death ensued as a consequence or result thereof, her intention to kill the said Charlie Bowen is a legal presumption, and the State is not required to make further proof of her intention to kill him. This intention, however, may be rebutted by proper evidence."

"17. You are instructed that if you believe from the evidence beyond a reasonable doubt, that the defend-

ant, Millie Tolliver, was the proprietress of the house in the city of Hot Springs, Arkansas, known as the Indian Club, which said house was, under the direction and management of Millie Tolliver, used as a place of entertainment and amusement to which the public were generally invited; and that the deceased, Charlie Bowen, visited said house and while there fell into or otherwise broke the glass of the door of said house, and that the said defendant thereupon became angry at the said Charlie Bowen and threw a bottle at him, striking him upon the head, thereby causing the death of the said Charlie Bowen, within a day and a year from said blow so inflicted by said defendant Millie Tolliver, then, in that event you will find the defendant guilty of murder in the first degree, provided that she acted after deliberation and premeditation and with malice aforethought, and of murder in the second degree should you find that she struck the blow with malice and without deliberation and premeditation.''

Instruction No. 15 is erroneous as applied to the facts of this case, for it can not be said, as a matter of law, that striking with a bottle raises a presumption of intention to kill. That is true when a weapon is used which is necessarily deadly in its use, or where the method in which an instrument is used is necessarily calculated to inflict great bodily harm; but a bottle is not necessarily a dangerous weapon, nor is the method in which the jury might have found that it was used necessarily calculated to inflict great bodily harm. The danger to be anticipated depended entirely upon the method in which the blow was inflicted and the force which was used. See, *Rosemond* v. *State,* 86 Ark. 160; Wharton on Homicide (3 ed.), § 87.

The instruction was incorrect, but it was not prejudicial, for the reason that appellant was only convicted of murder in the second degree, and the specific intent to take life is not an essential element of that degree of of homicide.

The same may be said with respect to instruction No. 17, which is erroneous as applied to the highest degree of murder. That instruction permitted the jury to find appellant guilty of murder in the first degree in the absence of any intent to kill, but it was not erroneous as a charge upon murder in the second degree, because it told the jury that the blow must have been struck with malice before the accused could be guilty of murder in the second degree. It therefore did not exclude the consideration of the degrees of manslaughter, which were embodied in other correct instructions on that subject.

Since appellant was only convicted of murder in the second degree, the erroneous part of the instruction which related to murder in the first degree was not prejudicial.

Judgment affirmed.